

**SIGNED this 02 day of September, 2010.**

_____
**JOHN T. LANEY, III
CHIEF UNITED STATES BANKRUPTCY JUDGE**
_____

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| In re: | | |
| Golden Grove Pecan Farm, | ) | |
| Smith Funeral Home, LLC | ) | |
| Legendary Performance Cars, | ) | |
| | ) | Jointly Administered Chapter 11 |
| Debtors. | ) | Case No. 10-40557 |
| | | 10-40558 |
| | | 10-40560 |

**Memorandum Opinion**

This contested matter is before the court on motions from a number of interested parties. The U.S. Trustee has filed a Motion to Appoint Chapter 11 Trustee; Phyllis and

Michael Bleckley have filed a Motion to Substitute Real Parties in Interest; and the Debtor/Receiver has filed a Notice of Intent to Comply with Orders of the Superior Court of Webster and Stewart Counties, Georgia by turning over property of the estate to the Bleckleys. A hearing was held on August 17, 2010, and the court took the matter under advisement. After considering the briefs submitted by the respective parties, arguments of counsel, and the pertinent statutory and case law, the court, for the reasons given below, determines that the Bleckleys' Motion to Substitute Real Parties in Interest should be denied; the Debtor's Notice of Intent to Comply with Orders of the Superior Court of Webster and Stewart Counties, Georgia should be denied; and the U.S. Trustee's Motion to Appoint Chapter 11 Trustee should be granted.

**Facts**

The debtors are receiverships created by Order of the Superior Court of Stewart County in September 2009. Certain property was placed under the custody and control of the receiverships and Salina Newton, CPA, was appointed receiver. Receiverships were also established in other judicial circuits using similar orders and mechanisms and placing other property in those counties under the control of receiverships with Salina Newton as the court appointed receiver. All of the property has an alleged relationship to Michael and Phyllis Bleckley who are currently under indictment on various criminal charges pending in the Chattahoochee Judicial Circuit. The receiverships arose from a request of the District Attorney for the Chattahoochee Judicial Circuit. The order appointing the receiver specifically authorized her to file bankruptcy for the receiverships.

During the course of her duties as receiver for five (5) separate business entities and organizations, the receiver alleges that she found it increasingly difficult to effectively

manage the receiverships and conduct her duties responsibly while reconciling the positions of the various courts as well as the claims that are interrelated, and reached across more than one judicial circuit, yet involved similar debts, the same collateral and different circumstances.

On April 13, 2010, a status conference was held in the Stewart and Webster County receiverships, Hon. R. Rucker Smith, presiding. The status conference was held and announcements were made from the bench, but no written order was entered or docketed on that conference until June 21, 2010. There is disagreement between the witnesses present and the court as to what the court's oral ruling was at the hearing on April 13, 2010 and no transcript exists to clarify. There was a difference of opinion as to whether the Superior Court announced termination of receiverships, relieved the receiver or whether certain property was removed from the receiverships. As of April 30, 2010, no written order had been entered from the hearing held April 13. On April 30, 2010 all five (5) business entities through the receiver, filed Chapter 11 Bankruptcy cases which have now been administratively consolidated and are being administered in this court. On June 21, 2010, the Superior Courts of Webster and Stewart Counties, Hon. R. Rucker Smith, entered two (2) orders *nunc pro tunc* to April 13, 2010, removing Salina Newton as the receiver in the Stewart and Webster County matters.

On or about July 7, 2010, on motions filed by the Bleckleys to dismiss four of the five cases and for relief from stay in all five cases, this court held hearings and considered the allegations that the receiver was without authority to file the cases on April 30 because of the June 21, 2010 order. This court held that Judge Smith's June 21 order terminating the receivership was not effective retroactively since bankruptcy had been filed in the interim and no relief from the stay had been obtained. All motions were denied and orders were entered. On the same day, the court authorized Golden Grove Pecan Farm to sell farm

equipment, which sale has occurred and the receiver retains the cash proceeds as a result thereof. Deere and Company still await the distribution of the proceeds from the sale of its collateral.

On or about July 21, 2010, the Hon. R. Rucker Smith, Superior Court Judge in Webster and Stewart Counties Noticed a Status Conference requesting that the receiver, Salina Newton, the receiver in all five cases to appear to discuss the status of the receiverships in Golden Grove Pecan Farm, Smith Funeral Home, LLC and property located in the Southwestern Circuit which may be property in the Legendary Performance Cars case. The conference was set for on August 2, 2010. On August 2, 2010, the Debtor and responsible party, Salina Newton, receiver, appeared at the status conference scheduled by the Honorable R. Rucker Smith, Judge of Superior Courts of Stewart and Webster Counties. At the conclusion of the hearing, Judge Smith ordered that the receiverships in Webster and Stewart Counties were dissolved. Judge Smith ordered the Debtor to turn over to the Bleckleys both pecan orchards, the cash proceeds from the sale of the farm equipment, all of the Smith Funeral Home assets, including but not limited to all real and personal property, and to also turn over to the Bleckleys three (3) of the classic automobiles which are allegedly property in the Legendary Performance Cars case but are located in Webster or Stewart Counties.

The court also found Salina Newton, personally, in criminal and civil contempt of court, summarily, indirectly and directly and ordered that she be incarcerated for five (5) days and pay two $500.00 fines in the two counties. Although Ms. Newton was confined to the courtroom while preparing a notice of appeal of the finding of contempt and a motion for supersedeas, she did file the notice and motion and her punishment has been postponed

pending the outcome of her appeal to the Georgia Court of Appeals while out on an own recognizance bond in each county.

At the August 17 hearing, Alonzo Whitaker, Assistant District Attorney for the Chattahoochee Circuit, testified that the Bleckleys have been investigated and indicted on a number of criminal charges that raise serious implications as to their honesty and ability to act as fiduciaries. The Bleckleys have also refused to testify in any matter before the court.

## Conclusions of Law

1. **The receiver cannot comply with the superior court's order to turn over property of the estate to the Bleckleys because the bankruptcy court retains exclusive jurisdiction over such property. In addition, neither the June 21, 2010 *nunc pro tunc* to April 13, 2010 superior court order nor the August 2, 2010 order fall within the "police or regulatory power" exception to the automatic stay.**

A *nunc pro tunc* entry is "for the purpose of recording some action taken or judgment rendered previously to the making of entry, which is to take effect as of the former date. Such an entry cannot be made to serve the office of correcting a decision however erroneous, or of supplying non-action on part of the court." Pendergrass v. Duke, 147 Ga. 10 (1917). Prior to the entry of Judge Smith's *nunc pro tunc* order, the receiver filed petitions under Chapter 11 of the bankruptcy code for the five (5) businesses under the receivership on April 30, 2010, as each Superior Court had authorized her to do in her order of appointment. This created a bankruptcy estate and vested exclusive jurisdiction of property of the estate within the bankruptcy court under 28 U.S.C. § 1334.[1] On or about July 7, 2010, on motions filed by the Bleckleys to dismiss

---

[1] The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction—
> **(1)** of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate; and

four of the five cases and for relief from stay in all five cases, this court held hearings and considered the allegations that the receiver was without authority to file the cases on April 30 because of the June 21, 2010 order. Witnesses testified as to what the court's April 13, 2010 oral orders directed, and there was no transcript to clarify. Judge Rucker Smith did not testify as to what was said at the April 13 hearing. This court held that Judge Smith's June 21 order *nunc pro tunc* to April 13 terminating the receivership was not effective because it had not been signed and filed before the bankruptcy cases were filed. The court also found that the Bleckleys failed to carry their burden of proof that the cases were filed in bad faith and denied their motions to dismiss. Because the superior court has no jurisdiction over property of the estate, the receiver cannot comply with Judge Smith's order to turn over such property to the Bleckleys. Furthermore, neither the receiver nor the Bleckleys filed for relief from the automatic stay. Accordingly, the receiver's request to turn over property of the estate to the Bleckleys is denied.

    The Bleckleys argue that Judge Smith's August 2, 2010 order dissolving the receivership falls within the §362(b)(4) exception to the automatic stay to enforce a governmental unit's or organization's police or regulatory power. The Bleckleys cite many cases in support of the proposition that a civil forfeiture action falls within the purview of the "police and regulatory" power exception to the automatic stay. However, none of these cases specifically dealt with the appointment or dismissal of a receiver once an estate had been established; none of the cases support the proposition that a state court receivership is exempt from the automatic stay; and, none of the cases support the argument that a receivership action is tantamount to a forfeiture action. Furthermore, it

---

        **(2)** over all claims or causes of action that involve construction of section 327 of title 11, United States Code, or rules relating to disclosure requirements under section 327.

appears that there is one case, <u>Pimper v. State ex rel. Simpson</u>, that is directly on point. <u>See</u> 274 Ga. 624, 626 (2001).

In <u>Pimper</u>, two corporations filed for protection under Chapter 11 of the bankruptcy code. Subsequent to such filings, the state court entered orders dismissing the State's forfeiture action and the underlying TRO and receivership. The debtors' principals appealed the trial court's earlier decision denying their motions to dissolve the receivership and TRO. Insofar as the appeal concerned the appellants in their individual capacity, the appeal was considered moot because the trial court had already dissolved the receivership. However, the Supreme Court of Georgia held that once the bankruptcy petitions were filed, the receiver was automatically converted by operation of law into a bankruptcy court custodian, and thus became authorized to dispose of property in the two bankruptcy estates only in accordance with the directives of the bankruptcy court. <u>Id</u>. As such, the Georgia Supreme Court held that the portion of the appeal concerning the dissolution of the receivership associated with the bankrupt corporations must be dismissed because it rests within the exclusive jurisdiction of the bankruptcy court and is subject to the mandatory automatic stay provisions of the bankruptcy code. As in the <u>Pimper</u> case, the filing of the bankruptcy petitions vested exclusive jurisdiction in the bankruptcy court under 28 U.S.C. § 1334 and converted the receiver into a bankruptcy custodian. Therefore, the superior court no longer has jurisdiction over property of the estate or the receivership, and the matter does not fall within the purview of the § 362(b)(4) exception to the stay. Accordingly, Judge Smith's order directing the receiver to turn over property of the estate is in violation of the automatic stay and is a nullity.

The Bleckleys cite a two part test developed by the Ninth Circuit to determine whether a government action is excluded from the automatic stay under §362(b)(4): the "pecuniary interest" test and the "public policy" test. See In re Berg 230 F.3d 1165, 1167 (9th Cir. 2000).

> "Under the pecuniary purpose test, the court determines whether the government action relates primarily to the protection of the government's pecuniary interest in the debtor's property or to matters of public safety and welfare. If the government action is pursued solely to advance a pecuniary interest of the governmental unit, the stay will be imposed. The public policy test "distinguishes between government actions that effectuate public policy and those that adjudicate private rights." Id.

In Berg, the question was whether Rule 38 (frivolous appeal) sanctions relate primarily to the protection of the government's pecuniary interest in the debtor's property or to matters of public policy. The court decided that prosecuting such sanctions did fall within the police and regulatory power exception because the enforcement of such sanctions relates primarily to matters of public policy. However, the instant case is distinguishable from Berg in that the government action at issue is not an action in which the state or government agency is attempting to enforce a state law relating to the health, safety, or welfare of the public. The exception is "intended to avoid a procedural bar where a governmental unit is suing the debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety or similar police or regulatory laws or attempting to fix damages for violation of such a law." In re Pan American Hosp. Corp., 364 B.R. 832 (Bankr. S.D. Fla. 2007). One clear example of an action that would

fall under the 364(b)(4) exception is an action in civil forfeiture to obtain a forfeiture judgment against the debtor's property used to facilitate the commission of a crime. See In re Chapman, 264 B.R. 565 (9th Cir. 2001).

The instant case is easily distinguishable from any of the above scenarios. While a civil forfeiture gave rise to the receiverships at issue, no matter has been brought before the court to determine the validity of such forfeiture action, nor has any motion been filed seeking to enforce a forfeiture judgment on behalf of some governmental entity. Rather, Judge Smith's order seeks to remove the receiver (now a bankruptcy custodian) and have her turn over property of the estate to individuals who have shown that they clearly lack the qualifications to act as fiduciaries. The pecuniary purpose test reviews whether the government acted primarily to protect its pecuniary interest in the debtor's property or to benefit the public's safety and welfare. In this case, the order is not seeking to advance the government's pecuniary interest or to effectuate public policy. The purpose of 362(b)(4) is not to allow a state court to turn over property of the estate to private individuals. In fact, such an action is more akin to the adjudication of private rights rather than the enforcement of a government regulation or implementation of public policy. Furthermore, such an action would in no way be the consequence of enforcing a state law affecting health, morals, and safety. In fact, turning over property of the estate to individuals who have been indicted for allegedly committing serious criminal offenses would be in direct contradiction to the purpose of 362(b)(4) in effectuating public policy. While this court has no authority to rule on that portion of the order dealing with the receiver's alleged contempt, any portion of the order removing the receiver, who is now a

bankruptcy custodian, and directing the receiver to disperse property of the estate to private individuals is in direct violation of the automatic stay.

**2. The Bleckleys refusal to testify combined with the serious allegations of dishonesty justify the appointment of a Chapter 11 trustee.**

According to the testimony of Alonzo Whitaker, the Bleckleys are subject to an ongoing investigation and have been indicted on multiple criminal charges, all of which are serious allegations that reflect negatively upon their ability to act as a fiduciary. Furthermore, at the direction of their attorney, the Bleckleys have refused to testify in any hearing before the court or the 341 meeting of creditors. Under the circumstances, the court finds that the allegations of dishonesty combined with the Bleckleys' refusal to testify and the liquid nature of some assets that could easily be dispersed justify the appointment of a Chapter 11 trustee to act as a fiduciary in this case. Accordingly, the U.S. Trustee's motions are granted, and the Bleckleys' motions to substitute parties are denied. An order in accordance with this memorandum opinion will be entered.